876 F.2d 124
 277 U.S.App.D.C. 365
 ANR PIPELINE COMPANY, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Tennessee Gas Pipeline Co., Union Gas Limited, Progas
Limited, Northern Minnesota Utilities, Long Island Lighting
Company, Northridge Petroleum Marketing, Inc., Great Lakes
Gas Transmission Co., Texas Eastern Transmission
Corporation, Intervenors.
TENNESSEE GAS PIPELINE COMPANY, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Texas Eastern Transmission Corporation, Union Gas Limited,
Progas Limited, ANR Pipeline Company, Great Lakes Gas
Transmission Co., Northridge Petroleum Marketing, Inc.,
Northern Minnesota Utilities, Intervenors.
TEXAS EASTERN TRANSMISSION CORPORATION, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Progas Limited, Northern Minnesota Utilities, Tennessee Gas
Pipeline Co., Great Lakes Gas Transmission Co., Northridge
Petroleum Marketing, Inc., ANR Pipeline Company, Long Island
Lighting Company, Intervenors.
GREAT LAKES GAS TRANSMISSION COMPANY, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Tennessee Gas Pipeline Co., Texas Eastern Transmission
Corporation, ANR Pipeline Company, Progas Limited, Michigan
Gas Company, Long Island Lighting Company, Northridge
Petroleum Marketing, Inc., Northern Minneso ta
Utilities, Independent Petroleum Association of America,
Intervenors.
INDEPENDENT PETROLEUM ASSOCIATION OF AMERICA, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Texas Eastern Transmission Corporation, Tennessee Gas
Pipeline Co., Progas Limited, Northern Minnesota Utilities,
TransCanada Pipeline Limited, Northridge Petroleum
Marketing, Inc., Great Lakes Gas Transmission Co., Union Gas
Limited, Intervenors.
 Nos. 88-1031, 88-1045, 88-1211, 88-1085 and 88-1179.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Feb. 21, 1989.
Decided May 23, 1989.
 
 William W. Brackett, with whom Daniel F. Collins, J. Gordon Pennington, Harold L. Talisman, John T. Ketcham, Washington, D.C., and Ernest B. Abbott were on the joint brief, for ANR Pipeline Co.
 
 
 1
 Judy M. Johnson, Houston, Tex., was on the joint brief for ANR Pipeline Co., and also entered an appearance for intervenor Texas Eastern Transmission Corp.
 
 
 2
 Narinder J.S. Kathuria, James D. McKinney, Jr. and William R. Mapes, Jr., Washington, D.C., were on the joint brief for ANR Pipeline Co., et al., and also entered appearances for Great Lakes Gas Transmission Co.
 
 
 3
 Paul W. Fox and Steven H. Neinast, Washington, D.C., were on the joint brief for ANR Pipeline Co., et al., and also entered appearances for intervenor Progas Ltd.
 
 
 4
 Terry O. Brackett, Washington, D.C., also entered an appearance, for ANR Pipeline Co.
 
 
 5
 James Howard and Terence J. Collins, Washington, D.C., also entered appearances, for Tennessee Gas Pipeline Co.
 
 
 6
 Robert C. Platt, with whom Gary J. Klein, Washington, D.C., was on the brief, for Independent Petroleum Ass'n of America and Tennessee Gas Pipeline Co., et al.
 
 
 7
 Robert H. Solomon, Attorney, F.E.R.C., with whom Catherine C. Cook, Gen. Counsel, and Joseph S. Davies, Deputy Sol., F.E.R.C., Washington, D.C., were on the brief, for F.E.R.C.
 
 
 8
 John Conway, Washington, D.C., also entered an appearance, for F.E.R.C.
 
 
 9
 Mary E. Baluss, Washington, D.C., was on the brief, for Northern Minnesota Utilities.
 
 
 10
 Marilyn A. Specht, Washington, D.C., also entered an appearance, for Northern Minnesota Utilities.
 
 
 11
 Ernest B. Abbott also entered an appearance, for Union Gas Ltd.
 
 
 12
 James J. Stoker, III, Arnold H. Quint and James F. Bowe, Jr., Washington, D.C., entered appearances, for Long Island Lighting Co.
 
 
 13
 John R. Schaefgen, Jr., Washington, D.C., entered an appearance, for Northridge Petroleum Marketing, Inc.
 
 
 14
 J. Gordon Pennington, Washington, D.C., also entered an appearance, for ANR Pipeline Co.
 
 
 15
 Wm. Warfield Ross, Daniel L. Koffsky and Janet M. Robins, Washington, D.C., entered appearances, for Michigan Gas Co.
 
 
 16
 Paul H. Keck and Robert I. White, Washington, D.C., entered appearances, for Transcanada Pipeline Ltd.
 
 
 17
 Before STARR, WILLIAMS and D.H. GINSBURG, Circuit Judges.
 
 
 18
 Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.
 
 STEPHEN F. WILLIAMS, Circuit Judge:
 
 19
 In October 1987 ANR Pipeline Company and Great Lakes Gas Transmission Company applied to the Federal Energy Regulatory Commission to extend the terms of the individual certificates of public convenience and necessity under which they were transporting imported Canadian natural gas. FERC's disposition of the applications has raised two sets of issues. First, FERC imposed conditions, confining the certificates to a shorter period than proposed and fixing a rate for ANR much higher than it had proposed to charge. Second, in finding that the proposed service advanced the "public convenience and necessity," as Sec. 7(e) of the Natural Gas Act, 15 U.S.C. Sec. 717f(e) (1982), requires as a predicate to certification, the Commission did not independently consider whether the importation of the gas was in the public interest, an issue already decided by the Economic Regulatory Administration, an office of the Department of Energy, under Sec. 3 of the Act, 15 U.S.C. Sec. 717f(b). We uphold the one condition as to which petitioners' objections are neither moot nor unripe; we also uphold the Commission's refusal to reopen the issue decided by the ERA.
 
 I. FERC's TERM AND RATE CONDITIONS
 Background
 
 20
 On July 10, 1981 FERC issued individual certificates of public convenience and necessity to ANR and Great Lakes to transport Canadian natural gas purchased by Texas Eastern Transmission Corporation and Tennessee Gas Pipeline Company. Natural Gas Pipeline Co. of America, 15 FERC p 61,254 (1981). Great Lakes was authorized to transport the gas from the U.S.-Canadian border to an interconnection with ANR in Michigan, and ANR to transport it from there to points specified for receipt by Texas Eastern and Tennessee. Although the contracts between the pipelines and their customers were to run for twenty years, FERC provided that the original certificates should expire on October 31, 1987, the date Texas Eastern's and Tennessee's import authorizations from the ERA would end.
 
 
 21
 On the basis of ERA's later decisions to extend the import authorizations through November 1, 2000,[1] the two transporting pipelines applied to FERC in the summer of 1987 for amendments extending their certificates to that date.
 
 
 22
 In the decision challenged here, FERC extended the certificates. Great Lakes Gas Transmission Co., 41 FERC p 61,094 (1987), reh'g denied, 42 FERC p 61,029 (1988). But it imposed a two-part limit on their duration, providing for them to end on the earlier of two events: first, the passage of one year, and second, the applicant pipeline's "acceptance of blanket certificates issued pursuant to section 284.221 of the regulations." Id. at 61,248 (footnote omitted).
 
 
 23
 The "blanket certificates" referred to in the conditions are ones that might be issued pursuant to the Commission's program to encourage pipelines to make transportation service available to all shippers. Acceptance of a blanket certificate obliges an accepting pipeline to carry gas even for parties selling gas in competition with the pipeline itself. The Commission hopes that by inducing pipelines to accept such certificates it will enable a wide range of gas producers and middlemen to sell gas to a wide range of buyers, thereby subjecting pipelines' gas sales to competition. See Order No. 436, 50 Fed.Reg. 42,408 (1985), aff'd in substantial part, remanded in part sub nom. Associated Gas Distributors v. FERC, 824 F.2d 981 (D.C.Cir.1987), cert. denied sub nom. Interstate Natural Gas Ass'n of America v. FERC, --- U.S. ----, 108 S.Ct. 1468, 99 L.Ed.2d 698 (1988), repromulgated as Order No. 500, 52 Fed.Reg. 30,334 (1987), modified, 52 Fed.Reg. 35,539 (1987); 52 Fed.Reg. 48,986 (1987); 53 Fed.Reg. 8439 (1988), appeal pending sub nom. American Gas Ass'n v. FERC, No. 87-1588 (D.C.Cir. filed Oct. 19, 1987). For a pipeline, a blanket certificate makes it possible to provide service to any place it can reach and to any customer, without the delay and expense of obtaining individual Sec. 7 certification, which is site- and customer-specific. The pipeline's service under a blanket certificate is subject to certain broad limits as to rates and other matters, and, of course, to a requirement that the pipeline provide "open access." See 18 C.F.R. Sec. 284.8(b) (1988) (requiring pipeline to provide service without "undue discrimination, or preference").
 
 
 24
 In addition to the term conditions, the Commission attached a rate condition to ANR's certificate, requiring it to charge the maximum rates that would be applicable for the same service under its Rate Schedule FTS-1, a schedule proposed by ANR for service under a possible future blanket certificate. See ANR Pipeline Co., 35 FERC p 61,400 (1986). This rate condition effected a fivefold increase in the rates paid by Tennessee and Texas Eastern.
 
 
 25
 On July 27, 1988 ANR accepted a blanket transportation certificate, ANR Pipeline Co., 44 FERC p 61,126 (1988), thereby triggering the expiration of its individual certificate. It now provides transportation service for Texas Eastern and Tennessee under that authority.[2] On October 27, 1988, two days before Great Lakes's amended certificate was due to expire, FERC extended its certificate for an additional one year or until the pipeline should accept a blanket certificate.
 
 
 26
 Mootness: Alleged Redundancy of Individual and Blanket Certificates
 
 
 27
 At the outset, FERC argues that ANR's petition for review should be dismissed as moot because under its blanket certificate ANR can transport natural gas for Tennessee and Texas Eastern pursuant to their contracts and charge the same rate as it would have charged under the individual certificate that it sought. Thus, it argues, the Commission's term and rate conditions no longer have any effect. See, e.g., Preiser v. Newkirk, 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975) (Article III prohibits a court from rendering advisory opinions and requires the presence of an actual controversy at all stages of judicial review). FERC's position is consistent with its view that "[c]ertificates for individual transportation transactions would be totally redundant to the authority already conferred by the blanket certificates." Tennessee Gas Pipeline Co., 43 FERC p 61,042, at 61,126 (dismissing as moot application for individual certificate by pipeline operating under blanket certificate) (footnote omitted), reh'g denied, 44 FERC p 61,094 (1988). As to rates, counsel for ANR confirmed at oral argument that the range of rates allowed under its blanket certificate encompasses those it would have charged under the individual certificate as originally proposed. Moreover, he indicated that a pipeline with a blanket certificate could provide service under a long-term contract, although he said such arrangements are uncommon.
 
 
 28
 Nonetheless, we find that the two types of certificates are not entirely redundant. Although a pipeline may not engage in undue discrimination under either a blanket certificate or an individual one, the Commission and the pipelines plainly regard the substantive standard applicable under a blanket certificate as more severe. In the nature of things, for example, the undue discrimination standard applicable to open-access carriers automatically rules out any refusal to carry based on the would-be shipper's selling in competition with the pipeline. See Order No. 500, 52 Fed.Reg. at 30,336. By contrast, FERC has stated that it will "not apply a generic, non-discriminatory access condition to individual transportation and sales certificates under section 7 of the NGA"; rather, FERC will evaluate potential discriminatory effects "on a case-by-case basis at the time such certificates are sought." Order No. 436, 50 Fed.Reg. at 42,426. So a pipeline appears to have an interest in keeping its individual Sec. 7 certificates alive, thereby preserving an option (though perhaps only a tenuous one) of renouncing its blanket certificate yet continuing operations in reliance on individual certificates alone. Thus the challenge to the term conditions imposed on ANR (considered as an aggregate) is not moot.[3]
 
 
 29
 FERC suggests that Northwest Pipeline Corp. v. FERC, 863 F.2d 73 (D.C.Cir.1988), establishes the mootness of ANR's challenge to all the certificate conditions. Northwest 's mootness holding was in fact far narrower. Although the Commission had attached term and rate conditions similar to those at issue here, the pipeline challenged only the rate conditions. When the certificate expired by virtue of its unchallenged term limits, the possibility of any prospective relief ended. Id. at 77. There, as here, no party sought retrospective relief. Obviously nothing in Northwest supports a finding of mootness for the term conditions contested here. If we should find the expiration of the individual certificate valid, however, ANR's challenge to the rate condition would be moot under Northwest.
 
 
 30
 The Commission does not argue that Great Lakes's challenge to the durational conditions in its certificate was mooted as a result of its being supplanted, on the eve of expiration, with a new certificate also limited to one year. It suggests instead that this challenge falls within the exception for actions capable of repetition yet evading review. See Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911); Brief for Respondent 19 n. 11. We note that in New Jersey Zinc Co. v. FERC, 843 F.2d 1497 (D.C.Cir.1988), a one-year limit did not evade review, since we issued our opinion shortly before the expiration of the one-year period. See id. at 1499. Experience suggests that the dispatch in that case was an exception to the rule manifested here, where the certificate under review was scheduled to expire, and was supplanted, well before the date of oral argument. Accordingly we find Great Lakes's challenge to the term conditions capable of repetition yet evading review.
 
 Validity of Fixed-Term Time Limit
 
 31
 Section 7(e) of the Natural Gas Act grants the Commission the "power to attach to the issuance of the certificate and to the exercise of the rights granted thereunder such reasonable terms and conditions as the public convenience and necessity may require." 15 U.S.C. Sec. 717f(e). This conditioning authority is "extremely broad." Transcontinental Gas Pipe Line Corp. v. FERC, 589 F.2d 186, 190 (5th Cir.1979), cert. denied, 445 U.S. 915, 100 S.Ct. 1275, 63 L.Ed.2d 599 (1980). Here the term conditions cause each certificate to expire at the earlier of (1) one year from its issuance or (2) the date on which the pipeline accepted a blanket certificate. See Great Lakes Gas Transmission Co., 41 FERC p 61,094, at 61,249 (Ordering Paragraphs (A) and (B)).
 
 
 32
 In New Jersey Zinc Co. v. FERC, the court reviewed four Commission orders, one of which contained just the same two-headed term restriction as was imposed here. 843 F.2d at 1499. The only aspect challenged, however, was the one-year limit. The court upheld that aspect of the condition because
 
 
 33
 [t]he decision to review individual certificates periodically is reasonably related to FERC's concern to assure nondiscriminatory access to transportation. As to the precise interval selected, we have no cause to second-guess the Commission's expert judgment, and we recognize that on questions of this order, "a certain amount of arbitrariness goes with [the] territory."
 
 
 34
 Id. at 1501 (quoting Associated Gas Distributors v. FERC, 824 F.2d at 1044).
 
 
 35
 In the orders challenged here FERC cited the same general concerns about discrimination. In the Order Denying Rehearing,, it discussed the potential for undue discrimination during the "transition period pending ultimate implementation of the blanket transportation policies." 42 FERC p 61,029, at 61,156 (citing Florida Gas Transmission Co., 41 FERC p 61,267, at 61,681 (1987) (discussing potential for discrimination during transition)).
 
 
 36
 Here, indeed, there was more than a generalized potential for discrimination. Natural gas purchasers had submitted specific allegations of discrimination by Great Lakes, see Great Lakes Gas Transmission Co., 41 FERC p 61,094, at 61,248, and the Commission started an investigation under Sec. 5 of the Natural Gas Act. Although FERC ended the investigation later on Great Lakes's motion, because all the claims were either settled or withdrawn, Great Lakes Gas Transmission Co., 45 FERC p 61,017, at 61,068 (1988), no one suggests that a quick glance at the claims should have persuaded the Commission that they were patently devoid of grounds for proceeding cautiously as to Great Lakes's certificate.
 
 
 37
 The fixed-term condition in ANR's certificate was also reasonable. The Commission could rely on its general concern about possible discrimination. See New Jersey Zinc, 843 F.2d at 1500-01. Moreover, as ANR's transportation evidently depended on Great Lakes's having carried the gas from the Canadian border, it was reasonable for the Commission to treat the two applications as a package and to provide for reexamination of ANR's situation at the same time it would be reviewing Great Lakes's.
 
 
 38
 Justiciability of Conditions Ending Certificates on Issuance of Blanket Certificate
 
 
 39
 Both ANR and Great Lakes also attack the conditions bringing their individual Sec. 7(c) certificates to an end on the issuance of a blanket certificate. We find ANR's claim moot and Great Lakes's unripe.
 
 
 40
 Our decision on the validity of the one-year term limit moots ANR's objection to the alternative provision. In New Jersey Zinc, we held that where the operation of a condition ending an individual certificate on issuance of a blanket was assumed to be valid (because the pipeline had failed to challenge the provision in its application for rehearing), the challenge to the one-year term was moot. 843 F.2d at 1502-03. The principle applies to the opposite side of the coin as well. There is one distinction. Here the still-disputed blanket-certificate limit took effect somewhat before the now validated one-year term would have come into play. But as no party seeks retroactive relief, the court could provide no redress for any illegality in the slightly earlier demise of ANR's certificate. Nor is there recourse to the exception for claims capable of repetition yet evading review. As ANR has now secured a blanket certificate, there is no likely prospect of its again having an individual one brought to an end by issuance of a blanket. Moreover, if the Commission thwarts ANR's apparent preference for overlapping individual and blanket certificates by denying its current request for an individual certificate, it may seek judicial review of that decision.
 
 
 41
 Great Lakes's challenge to the blanket certificate termination clause, however, is not moot. It is clearly capable of repetition, as the Commission shows a general intent to impose such clauses and Great Lakes has not sought a blanket certificate. It will also tend to evade review, as new individual certificates will annually supplant earlier ones.
 
 
 42
 However, although we concluded above that ANR's interest in overlapping certification was strong enough to defeat the Commission's argument that the authority of its blanket certificate mooted its attack on the conditions of the individual one, it does not follow that the mere possibility of such an interest will support a finding of ripeness for any pipeline's attack on the sort of contingent termination clause at issue here.
 
 
 43
 The Supreme Court has said, and we have frequently repeated, that in the context of reviewing agency determinations the doctrine of ripeness serves to
 
 
 44
 prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.
 
 
 45
 Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). The doctrine encompasses two distinct components: first, the fitness of the issues for judicial review; and second, the hardship to the parties if immediate review is withheld. Id. at 149, 87 S.Ct. at 1515.
 
 
 46
 We may assume without deciding that the issue is fit for judicial review. Although the specific terms of any blanket certificate issued to Great Lakes might bear on the appropriateness of the termination clause, the Commission has chosen to make termination automatic, regardless of any such details. So we may assume that the court could intelligibly evaluate the lawfulness of that approach now. We can, however, find no hardship to Great Lakes in postponing review. It has not applied for a blanket certificate, Brief for Respondent 19 n. 11, and nothing in the record indicates that it plans to do so. Nor is there much basis for any belief that uncertainty over the lawfulness of the provision is currently affecting the pipeline's "primary conduct." See Toilet Goods Association, Inc. v. Gardner, 387 U.S. 158, 164, 87 S.Ct. 1520, 1524, 18 L.Ed.2d 697 (1967). In Air New Zealand Ltd. v. CAB, 726 F.2d 832 (D.C.Cir.1984), we addressed a challenge to a similarly contingent provision in a service authorization--a condition that the carrier's authority would end on rejection by New Zealand (the nation) of a particular type of fare proposal that might be made by a United States carrier. We found that the "only conceivable effect" on the certificate holder's primary conduct was that it might be disinclined to file a fare proposal that "might set in motion a chain of events that would ultimately" bring on such a rejection. Id. at 838. The court found such an effect to be too "indirect, and also too weak" to satisfy the requirement of ripeness. Id.
 
 
 47
 Here, too, while the prospect of its individual certificate's ending might play some role in Great Lakes's contemplation of a blanket certificate, it seems likely to be dwarfed by other factors--the kind of speed and flexibility that a blanket certificate affords, on one side, and the more stringent limits on its freedom to reject possible customers and transactions, on the other. Moreover, there is no suggestion that Great Lakes is currently considering a blanket certificate application. Thus we cannot say that the pipeline feels any effect of the condition in the Sec. 7 certificate in the "concrete way" contemplated by Abbott Laboratories.
 
 Mootness of the Rate Condition
 
 48
 Given the lawful termination of ANR's certificate and the fact that it seeks only prospective relief, the challenge to the rate condition is moot. See Northwest Pipeline, 863 F.2d at 76; see also id. at 77 (claim for retrospective relief might present a justiciable claim).
 
 
 49
 II. FERC's DETERMINATION OF THE PUBLIC CONVENIENCE AND NECESSITY
 
 
 50
 In a separate challenge, the Independent Petroleum Association of America argues that in its determination under Sec. 7(e) of the Natural Gas Act that the proposed transportation served the public convenience and necessity, FERC failed to make an independent determination that the importation of gas, and its sale into domestic markets, served the public interest. Rather than taking a fresh look at the issue, FERC deferred to the Economic Regulatory Administration's finding on the point.
 
 
 51
 This problem of overlapping agency concerns arises from Congress's bifurcation of responsibilities relating to imported gas. The Department of Energy Organization Act, Pub.L. No. 95-91, 91 Stat. 565 (1977), codified in part at 42 U.S.C. Secs. 7111 et seq., split the responsibility for enforcing the Natural Gas Act between FERC and the Department of Energy. The Commission received the responsibility for issuing individual certificates under Sec. 7, see 42 U.S.C. Sec. 7172(a)(1)(D), while the Secretary of Energy was made responsible for regulating gas imports and exports under Sec. 3, see 42 U.S.C. Sec. 7151(b) (vesting in the Secretary any function of the Federal Power Commission not given to FERC); 42 U.S.C. Sec. 7172 (transfer of functions to FERC, omitting powers under Sec. 3). Soon thereafter, the Secretary delegated his Sec. 3 powers to the newly-established ERA. Department of Energy Delegation Order No. 0204-4, 42 Fed.Reg. 60,726 (1977); see 42 U.S.C. Sec. 7136 (setting up ERA); 42 U.S.C. Sec. 7136(b) (allowing delegation by Secretary to ERA).
 
 
 52
 The latest delegation order dealing with the regulation of imported gas was promulgated in 1984 and was accompanied by comprehensive policy guidelines. New Policy Guidelines and Delegation Orders From Secretary of Energy to Economic Regulatory Administration and Federal Energy Regulatory Commission Relating to the Regulation of Imported Natural Gas, 49 Fed.Reg. 6684 (1984). The Secretary again delegated to ERA his authority under Sec. 3 of the Act to regulate the importation of natural gas, id. at 6690 (Delegation Order No. 0204-111); in addition, he authorized FERC to exercise any of his powers under Sec. 7 with respect to imported gas, id. (Delegation Order No. 0204-112). The Commission was instructed that the delegation was made with "the recognition that the Secretary maintained the policy responsibilities for gas imports, and that the FERC should exercise its authority in a manner consistent with the gas import policy determinations established by the Secretary." Id. at 6688.
 
 
 53
 With this directive in mind, FERC decided in its Sec. 7 proceeding not to revisit ERA's ruling that the sale of imported gas to Texas Eastern and Tennessee met the public interest standard. The Commission explained its decision as follows:
 
 
 54
 Jurisdiction under section 3 of the NGA to authorize the importation of natural gas ... lies not with this Commission but with the Administrator of the ERA. The Commission has jurisdiction only over the transportation of the gas under section 7 of the NGA. We do not have jurisdiction to second guess the Administrator's determinations as to whether the importation is in the public interest, and we will not do so.
 
 
 55
 Great Lakes Gas Transmission Co., 41 FERC p 61,094, at 61,248. The Commission explicitly found the transportation itself required by the public interest. Id. We find its interpretation of the statutory scheme and the Secretary's orders correct; they do not require FERC to redo what ERA has already done.
 
 
 56
 It is true that the Commission's transportation jurisdiction may reach issues beyond those directly concerned with the transportation. In FPC v. Transcontinental Gas Pipe Line Corp., 365 U.S. 1, 81 S.Ct. 435, 5 L.Ed.2d 377 (1961), the Court upheld a Commission decision to deny a gas transportation certificate where the Commission concluded that the sale, even though not within the Commission's jurisdiction, would have an adverse effect on sales that were. But in Transco, despite the sale's impact on jurisdictional sales, no federal agency had any direct voice over whether it satisfied the public interest. We think it would be a considerable stretch from there to say that, in certifying transportation that is necessary to carry out a sale, the Commission is required to reconsider the very aspects of the sale that have been assessed by an agency specifically vested by Congress with authority over the subject.
 
 
 57
 Moreover, we do not understand FERC to suggest that it would not independently examine any effects claimed to be due to the specific transportation proposed, as opposed to effects inherent in the importation and sale of the gas in the United States as a whole. Indeed, in this very case the Commission has shown alertness to the implications of the specific transaction, limiting the duration of the transportation certificates because of concern over their anticompetitive potential.
 
 
 58
 IPAA notes that approval of a gas sale does not necessarily entail approval of transportation, citing Amoco Production Co., 33 FERC p 61,173 (1985), reh'g denied, 34 FERC p 61,145 (1986). There FERC issued a certificate for the sale of natural gas while denying the accompanying transportation request. Amoco seems to us to illustrate the point made above. The applicant sought transportation authority under an experimental "special marketing program" that was being phased out under orders of this court because of concern over the program's anticompetitive potential. See id. at 61,368 (citing Maryland People's Counsel v. FERC, 761 F.2d 768 (D.C.Cir.1985)). Approval of the sale did not entail approval of the transportation because of factors peculiar to the transportation. The Commission's action here seems entirely consistent with that view.
 
 
 59
 Nothing in the statute seems to invite the sort of duplicative effort that IPAA would have us require, and the Secretary's orders clearly sought to avoid it. The Guidelines stated that they made the review process "more expeditious, permitting prompter government review." New Policy Guidelines, 49 Fed.Reg. at 6685. The Secretary specifically instructed FERC that in exercising its powers over imported gas, the Commission was to act "consistently with the determinations made by the [ERA] Administrator and the policy considerations reflected in the authorization." Id. at 6689. The sort of reexamination of the public interest in the importation that IPAA seeks would thus run counter both to the Guidelines' general purpose and their specific mandate.
 
 
 60
 Finally, IPAA claims to find an inconsistency between FERC's conduct here and its Opinion No. 256, promulgated by FERC in Natural Gas Pipeline Co. of America, 37 FERC p 61,215 (1986), reh'g granted in part and denied in part, 39 FERC p 61,218 (1987), clarified, 42 FERC p 61,080 (1988), appeal pending sub nom. Trans-Canada Pipelines Ltd. v. FERC, 878 F.2d 401 (D.C.Cir. 1989). Opinion No. 256, however, appears to address an aspect of gas importation downstream from and largely irrelevant to transportation issues of the sort at stake here. It concerned an interstate pipeline that purchased Canadian natural gas under contracts that called for a two-part demand/commodity rate. The issue before FERC was the structure of that pipeline's charges to its customers, specifically the extent to which the pipeline could include the demand charge it paid the Canadian exporter in its (the importing pipeline's) demand charges to its customers. 37 FERC p 61,215, at 61,537. FERC quite rightly responded to IPAA's invocation of Opinion No. 256 by observing that the problem was "more properly an issue in a filing to comply with Opinion No. 256 or in a future [Texas Eastern] rate proceeding." Great Lakes Gas Transmission Co., 42 FERC p 61,029, at 61,158.
 
 
 61
 In short, we can find no basis for IPAA's dramatic claim that the Commission's handling of the Opinion No. 256 argument means the two agencies "have launched a bureaucratic shell game where neither agency takes 'a hard look' at the proposed transaction." Reply Brief for Petitioner IPAA 6. FERC properly avoided the effort to insinuate into its territory issues that Congress and the Secretary located elsewhere.
 
 
 62
 * * *
 
 
 63
 * * *
 
 
 64
 IPAA also argues that FERC improperly referred the claims of undue discrimination by Great Lakes to a Sec. 5 hearing, rather than resolving them in the Sec. 7 proceeding. Brief for Petitioner IPAA 27-28. The Commission, however, fully explained its decision to pursue the allegations in the Sec. 5 context. It said that assuring continued gas supply, even at the risk of some discrimination, was on balance more important than completing the discrimination inquiry first, at the risk of disrupting the gas supply at the outset of the winter heating season. See 41 FERC p 61,094, at 61,248. IPAA offers nothing to suggest that this judgment call was unreasonable.
 
 
 65
 * * *
 
 
 66
 * * *
 
 
 67
 We deny the petitions for review filed by ANR and Great Lakes. FERC clearly has the power to impose reasonable terms and conditions on pipelines, and the one-year term conditions in these individual certificates were reasonable in light of the Commission's general concern over discrimination and the specific allegations relating to Great Lakes. Because we uphold the fixed-term conditions, we need not reach the issues concerning the validity of the blanket certificate term conditions and the rate condition in ANR's certificate.
 
 
 68
 We also deny the IPAA's petition for review. FERC's decision not to re-open the issue of whether the importation served the public interest was the correct construction of the statute and the Secretary's jurisdictional mandate. The other issues raised by IPAA are meritless.
 
 
 69
 Petitions for Review Denied.
 
 
 
 [1]
 Texas Eastern Transmission Corp., 1 ERA p 70,733, reh'g denied, 1 ERA p 70,744 (1987), aff'd sub nom. Independent Petroleum Ass'n of America v. ERA, 870 F.2d 168 (5th Cir.1989); Tennessee Gas Pipeline Co., 1 ERA p 70,654 (1986)
 
 
 [2]
 Nevertheless, ANR has applied for the reinstatement or extension of its individual certificate. That application is not under review here
 
 
 [3]
 Of course we do not suggest that the pipeline's interest in a less stringent regime of non-discrimination could outweigh FERC's policy justifications for refusing to grant an individual certificate to a pipeline already operating under a blanket certificate (except to allow for the construction of new facilities). See Tennessee Gas Pipeline Co., 43 FERC p 61,042, at 61,126