**NORTHWEST PIPELINE CORPORATION,**
Petitioner,

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

**No. 87–1502 et al.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 4, 1988.
Decided Dec. 13, 1988.

John T. Ketcham, Washington, D.C., with whom Stephen K. Schroeder, Steven W. Snarr, Salt Lake City, Utah, Alan J. Statman and Joseph S. Koury, Washington, D.C., were on the brief for petitioner in Nos. 88–1069, 88–1070 and 88–1133.

Dale A. Wright and James T. McManus, Washington, D.C., also entered appearances for Northwest Pipeline Corp.

Timm Abendroth, Atty., F.E.R.C., with whom Catherine Cook, General Counsel, and Jerome M. Feit, Solicitor, F.E.R.C., Washington, D.C., were on the brief, for respondent in Nos. 87–1133, 87–1502, 88–1069 and 88–1070.

Hanford O'Hara, Washington, D.C., and Samuel Soopper, Atty., F.E.R.C. also entered an appearance for respondent.

Ted P. Gerarden, Washington, D.C., for intervenor Cascade Nat. Gas Corp. in Nos. 87–1503, 88–1069, and 88–1070. Robert J. Haggerty, Washington, D.C., also entered an appearance for Cascade Natural Gas Corp. in No. 87–1502.

Allan Garten with whom, Edward A. Finklea, Portland, Or., was on the brief for intervenor, James River II Inc. in Nos. 87–1502, 88–1069, 88–1070 and 88–1133.

Michael C. Dotten, Portland, Or., was on the brief for intervenor Oregon Sheet Mills in No. 87–1502.

Daniel F. Collins, Katherine L. Henry, Washington, D.C., and Donald C. Shepler, Salt Lake City, Utah, entered appearances for intervenor, Colorado Interstate Gas Co. in Nos. 87–1502, 88–1069 and 88–1133.

David J. Meyer, Spokane, Wash., entered an appearance for intervenors Development Assoc. Inc. and the Washington Water Power Co. in No. 87–1502.

William I. Harkaway, Steven J. Kalish and Douglas M. Canter, Washington, D.C., entered appearances for intervenor, Southwest Gas Co. in Nos. 87–1502, 88–1069, 88–1070 and 88–1133.

Thomas F. Brosnan and Andrea J. Ercolano, Washington, D.C., entered appearances for intervenor Washington Natural Gas Co. in Nos. 87–1502, 88–1069, 88–1070 and 88–1133.

Gary G. Sackett, Salt Lake City, Utah, entered an appearance for intervenor, Mountain Fuel Resources in Nos. 87–1502 and 88–1133.

Steven F. Greenwald and Lindsay How-Downing, San Francisco, Cal., entered appearances for intervenor Pacific Gas & Elec. Co. in No. 87–1502.

David J. Evans, Washington, D.C., entered an appearance for intervenor, Chevron Chemical Co. in No. 88–1069.

Before WALD, STARR and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge STARR.

STARR, Circuit Judge:

Northwest Pipeline Corporation seeks review of ten Federal Energy Regulatory Commission orders, five of which imposed a rate condition on Northwest's certificates of public convenience for the transportation of natural gas, and five of which denied petitions for rehearing on these certificates. For the reasons stated below, we deny the petitions for review.

I

This case arises out of a multi-pronged rate system crafted by Northwest. Our story begins on the last day in May, 1985. On that day, the Commission approved a

settlement of Northwest's general rate proceedings. *Northwest Pipeline Corp.*, 31 FERC ¶ 61,263 (1985). The settlement established four new transportation rate schedules, dubbed T–2 through T–5 inclusive. The structure of those rates, which need not detain us here, are helpfully described in Northwest's opening brief. Brief for Petitioner at 4–5. With those rates thus established, Northwest thereafter sought authorization under section 7(c) of the Natural Gas Act, 15 U.S.C. § 717f(c) (1982), to provide transportation services to various shippers at the rates established under three of the four schedules (all save for T–3). Much to Northwest's chagrin, the Commission thought the better of it and conditioned the § 7(c) certificates on Northwest's charging yet another rate, namely T–6. As we are led to understand, Rate Schedule T–6 embodied Northwest's transportation rate for services rendered pursuant to section 311 of the Natural Gas Policy Act of 1978, 15 U.S.C. § 3371 (1982). Northwest describes its T–6 rate in the following way: "Northwest filed its Rate Schedule T–6 for the limited purpose of governing a very few NGA Section 311 transportation services which were then in progress and were expected to continue for very limited contract terms." Brief for Petitioner at 6 n. 10.

Northwest decried the Commission's action, suggesting that its intermingling of rates had created an unwanted (an unlawful) mutant. As Northwest saw it, a deal was a deal, and yet the Commission was seeking to unscramble the eggs (of the May 31, 1985 settlement omelet) by imperiously requiring Northwest to charge a different rate (T–6) than those agreed to by the customers (T–2, T–4 and T–5). To make matters worse, Northwest complained, "[t]he condition was imposed without any hearings or record evidence relating to Rate Schedule T–6 and without any claim that the T–2, T–4 and T–5 transportation rates approved in [the settlement proceedings] were no longer just and reasonable." Brief for Petitioner at 7. The real (and obvious) fly in the ointment was that T–6 was lower than the T–5 rate (although, in fairness, it was higher than either the T–2 or T–4 rate). *Id.* As Northwest viewed the situation, the Commission had unilaterally imposed this rate in violation of the structural protections afforded by sections 4 and 5(a) of the Natural Gas Act, 15 U.S.C. §§ 717c(c), 717d(a). To make bad matters worse, Northwest complained, FERC had acted in high-handed fashion without pausing to consider the effect of the unwanted rate condition on Northwest's take-or-pay costs. Here is the way Northwest puts it:

> The Commission's willful disregard of this "particularly vexing problem in the natural gas industry with which [this Court has] expressed ... concern," is especially egregious because the Commission-approved T–5 Settlement rate included a component providing for the recovery of increased revenues to reimburse Northwest for a reasonable portion of take-or-pay costs resulting from sales replacement transportation.

Brief for Petitioner at 11 (internal citation omitted).

But this only sets the stage for what was then to come. With the battle lines thus drawn between Northwest and the Commission, the section 7(c) certificates threw off their mortal coils in June 1988. It was then that Northwest accepted a blanket certificate under FERC's seminal Order No. 436. *See Associated Gas Distributors v. FERC*, 824 F.2d 981 (D.C.Cir.1987), *cert. denied sub nom. Southern California Gas Co. v. FERC*, — U.S. —, 108 S.Ct. 1469, 99 L.Ed.2d 698 (1988). Upon that development, as FERC succinctly puts it, "all of the certificates along with their rate terms, expired by their own terms." Brief for Respondent at 13. For that rather fundamental reason, FERC, joined by two intervenors,[1] contends that the case is now

---

1. James River II, Inc. has intervened on behalf of FERC, arguing that Northwest's acceptance of the Order 436 blanket certificate mooted their challenge under the section 7(c) certificates. In addition, James River contends that

Northwest cannot raise a claim for retroactive relief before this court because it (Northwest) failed to exhaust its administrative remedies before FERC. Similar arguments in support of

moot. Another intervenor, however, purports to support Northwest.[2] The parties are in further disaccord as to whether, if the case is indeed moot, FERC's orders should be vacated under the *Munsingwear* doctrine. *United States v. Munsingwear,* 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950). Among other contentions, James River II, Inc. contends that it will suffer harm in separate, independent antitrust litigation which it has initiated against Northwest out in the Pacific Northwest. Of this we shall presently say more, but we must first turn to the potentially case-killing question of mootness *vel non.*

## II

### A

The doctrine of mootness is founded on the "case or controversy" requirement of Article III, § 2 of the Constitution. *See, e.g., Honig v. Doe,* —— U.S. ——, 108 S.Ct. 592, 601, 98 L.Ed.2d 686 (1988); *Nebraska Press Assn. v. Stuart,* 427 U.S. 539, 546, 96 S.Ct. 2791, 2796, 49 L.Ed.2d 683 (1976); *Gulf Oil Corp. v. Brock,* 778 F.2d 834, 838 (D.C.Cir.1985). *But see Honig,* 108 S.Ct. at 607–09 (Rehnquist, C.J., concurring) (suggesting an attenuated connection between mootness doctrine and Article III that can be overridden by compelling circumstances). This requirement forbids federal courts from issuing advisory opinions or "decid[ing] questions that cannot affect the rights of litigants in the case before them." *Better Gov't Ass'n v. Department of*

*State,* 780 F.2d 86, 90–91 (D.C. Cir.1986) (quoting *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971)). Unless we are presented with a " 'real and substantial controversy admitting of specific relief through a decree of conclusive character,' " we are obliged to find the case moot. *Preiser v. Newkirk,* 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975) (quoting *Aetna Life Ins. v. Haworth,* 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937)). Our obligation is no less pressing in the context of agency action. *See Tennessee Gas Pipeline Co. v. Federal Power Com'n,* 606 F.2d 1373, 1379 (D.C.Cir.1979) (citing *Mechling Barge Lines v. United States,* 368 U.S. 324, 328–330, 82 S.Ct. 337, 340–41, 7 L.Ed.2d 317 (1961)).

Here, Northwest seeks elimination of the T–6 rate condition in each of five challenged certificates. In addition to the rate condition, however, these certificates contained a condition limiting their duration to the earlier of one year "or the date on which Northwest accepts a blanket certificate under Order No. 436." *See, e.g.,* 39 FERC ¶¶ 61,092, 61,247–88 (1978).[3] In June 1988, Northwest voluntarily accepted this blanket transportation certificate, thereby terminating the earlier § 7(c) certificates. Obviously, the challenged rate terms disappeared into the regulatory netherworld when the certificates themselves entered the archives.[4] Since Northwest

---

FERC's position are advanced by intervenor Oregon Steel Mills, Inc.

2. Cascade Natural Gas Corporation has provided nominal, yet substantively dubious, support for Northwest in its intervening papers. Cascade argues that the case should not be found moot if we conclude that Northwest properly preserved its claim for retroactive relief. However, Cascade then goes on to argue that no retroactive relief should be available to Northwest because, among other things, Northwest failed to exhaust its administrative remedies.

3. The Order 436 "blanket certificate" authorizes Northwest to offer nondiscriminatory transportation services on a self-implementing basis, based on rates set forth in a schedule approved by FERC in July 1988. Order No. 436, 50 Fed. Reg. 42,408 (1985). This court "up[held] the substance of Order No. 436" in *Associated Gas*

*Distributors v. FERC,* 824 F.2d 981, 1000 (D.C. Cir.1987), *cert. denied sub nom. Southern California Gas Co. v. FERC,* —— U.S. ——, 108 S.Ct. 1469, 99 L.Ed.2d 698 (1988). The Commission repromulgated the heart of Order No. 436 in Order No. 500, 52 Fed.Reg. 30,344 (1987), *modified,* 52 Fed.Reg. 35,539; 52 Fed.Reg. 39,630 (1987) (Order No. 500–B); 52 Fed.Reg. 48,986 (1987) (Order No. 500–C); 53 Fed.Reg. 8,439 (1988) (Order No. 500–D).

4. In its statement accepting the new blanket certificate, Northwest acknowledged that rate schedules T–2 through T–7 were thereupon "revoked, terminated, cancelled, and abandoned." *See Northwest Pipeline Corporation,* Docket Nos. 86–578–00, 86–578–014, "Compliance Filing" of June 10, 1988 at 3–4.

now operates under the Order 436 blanket certificate, it is abundantly evident that no prospective relief is available with respect to the now-rescinded § 7(c) certificates. Thus, to the extent it seeks elimination of the T–6 rate in these certificates, Northwest's claim is, beyond reasonable dispute, moot. *Cf. New Jersey Zinc Co. v. FERC,* 843 F.2d 1497, 1503 (D.C.Cir.1988) (legality of condition limiting the duration of § 7(c) certificate mooted by the acceptance of an Order 436 blanket certificate).

█ Northwest attempts to skirt this rather formidable impediment by arguing that imposition of the T–6 rate condition constitutes unlawful agency action which fits within the familiar exception of "capable of repetition, yet evading review." *See Southern Pacific Terminal Co. v. Interstate Commerce Commission,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911).[5] We disagree. As the Supreme Court has stated, "the capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality." *City of Los Angeles v. Lyons,* 461 U.S. 95, 109, 103 S.Ct. 1660, 1669, 75 L.Ed.2d 675 (1983). Northwest has not even attempted to show that the circumstances in question are likely to recur. Nor can Northwest plausibly do so in light of the transitional nature of FERC's efforts to implement its seminal Order 436. Even if Northwest could show that it might be faced with similar "coercive behavior" in the future, it is simply not the case that imposition of a rate condition under these circumstances will necessarily "evade review." Plainly, a challenge to the legality of a rate condition that seeks retroactive relief (*i.e.,* recovery of the difference between the two rate schedules) will not be mooted by the expiration of the relevant certificates, regardless of the circumstances under which the certificates expire. *Cf. Flagg v. Brooks,* 436 U.S. 149, 154 n. 3, 98 S.Ct. 1729, 1732 n. 3, 56 L.Ed.2d 185 (1978) (mooting of claims for injunctive relief does not moot a case in which claims for damages remain); *Powell v. McCormack,* 395 U.S. 486, 498, 89 S.Ct. 1944, 1951, 23 L.Ed. 2d 491 (1969) (claim for damages should be denied on the merits, not on ground of mootness). Thus, we can discern nothing that would fail to keep this sort of dispute alive *if* a request for retroactive relief were properly made. It is to that question that we now turn.

#### B.

In May 1987, Northwest officially accepted certificates containing the disputed T–6 rate for three of its customers and then began providing service thereunder.[6] Joint Appendix (J.A.) at 88–92. Northwest now seeks to recoup the difference between the lower T–6 rate that it charged these three shippers and the higher T–5 rate that it believes it was entitled to charge. As discussed above, this claim would obviously survive the termination of the § 7(c) certificates and (potentially) present a live controversy.

█ However, a major stumbling block stands in Northwest's way: its failure to comply with the well-understood statutory prerequisite to securing judicial review. Section 19(b) of the Natural Gas Act provides that "[n]o objection to the order of the Commission shall be considered by the [reviewing] court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure to do so." 15 U.S.C. § 717r(b) (1982). The obvious (and salutary) purpose of the § 19(b)

---

**5.** This exception is warranted, Northwest claims, because the combination of the rate and duration conditions in its § 7(c) certificates and a FERC order that it either transport gas for all its T–6 shippers at the T–6 rate under a blanket certificate or, alternatively, pursuant to the T–6 conditioned § 7(c) certificates, *see James River Corp. of Nevada v. Northwest Pipeline Corporation,* 42 F.E.R.C. ¶ 61,344 (March 22, 1988), *reh'g denied,* 44 F.E.R.C. ¶ 61,030 (1988), created ex-

cessive economic pressure to accept the Order 436 blanket certificate.

**6.** Intervenor Cascade, one of the three shippers receiving transportation from Northwest at the T–6 rate, states that services were initiated to it on May 3, 1987. Brief of Intervenor Cascade Natural Gas Corporation at 4.

exhaustion requirement is to afford the Commission an opportunity to bring its knowledge and expertise to bear on an issue before it is presented to a generalist court. *See Federal Power Commission v. Colorado Interstate Gas Co.*, 348 U.S. 492, 501, 75 S.Ct. 467, 472, 99 L.Ed. 583 (1955); *Public Service Com'n of New York v. Federal Power Commission*, 543 F.2d 757, 775 n. 116 (D.C.Cir.1974).

Here, as we read this record, Northwest simply did not present the Commission with a claim for retroactive relief. The pivotal language is found in the June 1987 petition for rehearing, in which Northwest requested "elimination of the conditions requiring use of Northwest's T–6 rate, and approval of use of Northwest's T–2 through T–5 rates as applicable." J.A. at 35. Although Northwest emphatically asserts that this statement sufficiently raised the retroactive recovery issue for the Commission's consideration, we think not.[7] Obliged, as we are, to apply section 19(b) "punctiliously," *see New Jersey Zinc*, 843 F.2d at 1503, we are powerless to review Northwest's claim for retroactive relief.[8] Although permissible under certain circumstances, *see Consumer's Counsel, State of Ohio v. FERC*, 826 F.2d 1136, 1139 (D.C.Cir.1987) (FERC can lawfully impose retroactive remedy under section 5 to correct its own error and put pipeline customers in position they would have enjoyed but for the error); *Tennessee Valley Municipal Gas Ass'n v. FPC*, 470 F.2d 446, 452 (D.C.Cir.1972) (same), retroactive relief cuts to the heart of the concerns and values which inform the "filed rate" doctrine. *See Arkansas*

*Louisiana Gas Co. v. Hall*, 453 U.S. 571, 576–78 & n. 8, 101 S.Ct. 2925, 2929–31 & n. 8, 69 L.Ed.2d 856 (1981); *Columbia Gas Transmission Corp. v. FERC*, 831 F.2d 1135, 1140–41 (D.C.Cir.1987), *reh'g denied*, 844 F.2d 879 (1988). In this context, more than an oblique, indeed opaque, reference to "applicable" rates is required in order to bring before the Commission a request for what is, fairly viewed, extraordinary relief.

### III

The Commission, joined by intervenors, contends that if we determine the case is moot, as we have, we should dismiss Northwest's petition for review without disturbing the agency's orders. The Commission and intervenor James River II, Inc. argue that vacating the orders will have a prejudicial effect on James River's pending antitrust action against Northwest in U.S. District Court in Oregon. *See James River II, Inc. v. Northwest Pipeline Corporation*, Civil No. 87–1141 (D.Ore.). In addition, intervenors Cascade and Oregon Steel, *see supra* nn. 1–2, contend that vacatur would wipe out a priority scheme for Northwest's interruptible customers embodied in the challenged orders. Northwest, in contrast, asserts that its efforts to defend James River's lawsuit will be prejudiced if the orders are left intact.

In this setting, we are guided by the familiar principles enunciated in *United States v. Munsingwear*, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950). There, the Supreme Court was confronted with an effort to employ a district court decision for

---

7. At oral argument, counsel for Northwest asserted that, in his years of practice, he had never known the Commission to require a specific request for retroactive relief in order for it to consider the issue, nor had he ever seen such a request. While we have respectfully considered these representations, we are, upon reflection, convinced—for reasons set out more fully in the text below—that § 19(b) requires a clear and specific request for the extraordinary remedy of retroactive relief.

8. We are not unmindful of Northwest's claim that it would be unreasonable to require it to have raised the issue of retroactive relief before FERC on June 1, 1987, since it had not—by that point—even submitted any bills to its three T–6

customers. However, as of June 1, 1987, Northwest had already provided four weeks of service to at least one of its customers, intervenor Cascade Natural Gas Corporation. *See supra* note 6. Furthermore, a reasonable estimate of the time it would take for FERC to consider Northwest's petition for rehearing should have put Northwest on notice that it could expect at least several weeks of service at the T–6 rate. In fact, the Commission's eventual denial of Northwest's petition was issued on July 23, 1987. In light of these circumstances, it was unreasonable for Northwest not to have anticipated its desire for retroactive application of alternative rates. Thus, the claim for such relief should have been included in Northwest's petition before FERC.

collateral estoppel purposes when, by virtue of the supervening condition of mootness, that decision had not been reviewed on appeal. The Court found itself duty bound to vacate the lower court's opinion, because "[w]hen that procedure is followed, the rights of all parties are preserved; none is prejudiced by a decision which in the statutory scheme was only preliminary." *Id.* 340 U.S. at 40, 71 S.Ct. at 107. The Supreme Court has subsequently reaffirmed the proposition that *Munsingwear* vacatur is a "duty" of an appeals court confronted with a lower court judgment mooted before appeal. *See Great Western Sugar Co. v. Nelson,* 442 U.S. 92, 99 S.Ct. 2149, 60 L.Ed.2d 735 (1979) (per curiam). Circuit courts have applied the doctrine as a matter of course. *See, e.g., Mississippi Power & Light Co. v. FERC,* 724 F.2d 1197, 1198 (5th Cir.1984); *Tennessee Gas Pipeline v. FPC,* 606 F.2d 1373, 1382–83 (D.C.Cir.1979).[9]

*Munsingwear* vacatur was extended to the administrative context in *Mechling Barge Lines v. United States,* 368 U.S. 324, 329, 82 S.Ct. 337, 340, 7 L.Ed.2d 317 (1961). By following faithfully the course laid out by the Supreme Court in that case, we necessarily arrive at the conclusion that the orders before us must be vacated. However, particularly in light of the various expressions of concern by the parties with regard to possible collateral effects of this action, our decision to vacate FERC's orders should not be viewed as foreclosing any determination hereafter with respect to the substantive or procedural legality of the imposition of the T–6 rate. Nor should our action be viewed as eradicating any claims based on Northwest's pricing behavior under the T–6 rate. We also have no occasion to pass on the "first-come, first-served" priority scheme for Northwest's interruptible customers established in a

FERC order not before us, *see James River Corp. of Nevada v. Northwest Pipeline Corp.,* 44 F.E.R.C. ¶¶ 61,030, 61,103 (1988), nor do we envision our vacatur as having any collateral effects upon that scheme. In short, intervenors' claims of collateral prejudice cannot compromise our duty under *Munsingwear* and *Mechling Barge* to vacate the orders under review.

\* \* \* \* \* \*

For the foregoing reasons, we hold that Northwest's challenge is moot. To the extent the challenge is premised on Northwest's desire for retroactive relief, that claim is barred by virtue of Northwest's failure specifically to request such relief. Finally, for the reasons stated, we vacate the orders under review in compliance with *Munsingwear's* strictures.

JUDGMENT ACCORDINGLY.

---

**9.** An exception from the *Munsingwear* doctrine has emerged when the losing party in the trial court (or agency) attempts to avoid the precedential effect of the lower court's ruling by deliberately acting to moot the case on appeal. *See Center For Science in the Public Interest v. Regan,* 727 F.2d 1161, 1165 (D.C.Cir.1984); *Ringsby Truck Lines v. Western Conference of Teamsters,* 686 F.2d 720 (9th Cir.1982). Inter-

venor James River II attempts to make use of this exception by arguing that Northwest is responsible for the case becoming moot. Brief of Intervenor James River II at 17–18. But, as FERC correctly notes, this line of cases is not apposite since Northwest is opposing a finding of mootness and seeks a resolution of the case on the merits.