COLORADO INTERSTATE GAS COMPANY, Petitioner,

v.

FEDERAL ENERGY REGULATORY COMMISSION, Respondent,

K N Energy, Inc., Public Service Company of Colorado, Western Gas Supply Company, and Cheyenne Light, Fuel and Power Company, Intervenors.

Nos. 88–1169, 88–1273 and 88–1478.

United States Court of Appeals, Tenth Circuit.

Dec. 1, 1989.

Donald C. Shepler, Gen. Atty. and Daniel F. Collins, Sr. Vice President, Colorado Interstate Gas Co., Washington, D.C. (William W. Brackett, Atty., Washington, D.C., with him on the brief), for petitioner.

Robert H. Solomon, Atty. (Catherine C. Cook, Gen. Counsel, Jerome M. Feit, Sol., and Frank R. Lindh, Atty., on the brief), F.E.R.C., Washington, D.C., for respondent.

T.J. Carroll, III, Lakewood, Colo., for intervenor, K N Energy, Inc.

James K. Tarpey and Kenneth V. Reif of Kelly, Stansfield & O'Donnell, Denver, Colo., filed a brief for intervenor, Public Service Group.

Before SEYMOUR and BARRETT, Circuit Judges, and WEST,* District Judge.

SEYMOUR, Circuit Judge.

In this consolidated appeal, petitioner Colorado Interstate Gas Company (CIG), a transporter of natural gas, protests the imposition of various conditions which respondent Federal Energy Regulatory Commission (FERC) attached to its approval of CIG's three applications for certificates of public convenience and necessity under section 7(c) of the Natural Gas Act (NGA), 15 U.S.C. § 717f(c) (1988). In all three cases, FERC limited the duration of the certificates to either one year, or until CIG accepted a blanket certificate, instead of approving the longer terms CIG had requested. In one application, FERC required in addition that CIG charge a higher transport rate than it had proposed. In this application, FERC also refused to certify the firm transport service CIG had requested, limiting CIG to providing interruptible service only.

CIG challenges all of the conditions as arbitrary and capricious, and attacks the rate condition as beyond FERC's statutory authority to impose conditions on its approval of certificates under the NGA. We hold that CIG's acceptance of a blanket certificate, which caused the three individual certificates to expire and allowed CIG to offer firm service at the rate it originally requested, has mooted the claims based on the one-year term limitation, the rate condition, and the denial of firm service. We also hold that we cannot review the validity of the blanket certificate acceptance term

* Honorable Lee R. West, United States District Judge for the Western District of Oklahoma, sitting by designation.

limitation in the three applications at issue because CIG did not properly challenge this limitation in administrative proceedings below.

## I.

## BACKGROUND

CIG is a major interstate seller and transporter of natural gas, subject to FERC regulation under the NGA, 15 U.S.C. §§ 717 *et seq.* (1988). The NGA prohibits the transport of natural gas absent FERC certification. Traditionally, FERC has certified energy transactions on an individual basis, which are the type of certificates at issue in the present appeal. Following FERC's promulgation of Order No. 436, however, interstate natural gas companies also have been able to obtain authorization to transport gas under a so-called "blanket" certificate procedure. A blanket certificate enables a transporter of natural gas to provide service throughout its pipeline system without the necessity of individual section 7(c) certification for each transaction with each customer. This added freedom is not without its regulatory *quid pro quo*, however. A transporter under blanket certification must provide access to all shippers on a "first-come, first-served" basis, even if the shipper intends to compete with the pipeline company in the sale of gas. Holders of blanket certificates are also under loose rate regulation and are subject to a variety of other procedural and substantive constraints. *See generally* 18 C.F.R. §§ 284.1–.13; §§ 284.-221–.226 (1989) (*promulgated as* part of Order No. 436, 50 Fed.Reg. 42,408 (1985)), *vacated sub nom. Associated Gas Distribs. v. FERC,* 824 F.2d 981 (D.C.Cir.1987), *cert. denied,* 485 U.S. 1006, 108 S.Ct. 1468, 99 L.Ed.2d 698 (1988), *repromulgated as* Order No. 500, 52 Fed.Reg. 30,334 (1987).[1] The purpose of the new blanket procedure is to increase downstream competition in natural gas sales by ensuring that sellers who do not transport their own gas have access to transportation facilities. *See Associated Gas Distribs.,* 824 F.2d at 994. Throughout the administrative proceedings in the present case, CIG was negotiating for a suitable blanket certificate. *See* rec., tab 7, at 105 n. 1.

### A. Case No. 88–1169

In December 1986, CIG applied for an individual certificate of public convenience and necessity authorizing the transport of up to 125,000 Mcf[2]/day, and up to 22.5 Bcf[3]/year of natural gas for its largest customer, Intervenor Public Service Company of Colorado and its subsidiaries (PSCo). The application ensued from an agreement under which CIG would transport gas that PSCo purchased from Intervenor K N Energy, Inc. (K N), a gas producer. In its application, CIG requested an initial ten-year term, and proposed that PSCo have the option to elect "firm"[4] or "interruptible"[5] service. The proposed initial rate of transport was $.306/Mcf for the first 40,000 Mcf/day transported and $.18/Mcf for any volume above 40,000. These charges would be credited against a

---

**1.** The court in *Associated Gas Distribs. v. FERC,* 824 F.2d 981 (D.C.Cir.1987), upheld most of the provisions in Order 436, but vacated the order in its entirety because the parts of the order it remanded to FERC for reconsideration were better considered in relation to the entire regulatory framework. *Id.* at 1044. Order No. 500, 52 Fed.Reg. 30,334 (1987), *modified,* 52 Fed.Reg. 35,539 (1987); 52 Fed.Reg. 39,630 (1987) (Order No. 500–B); 52 Fed.Reg. 48,986 (1987) (Order No. 500–C); 53 Fed.Reg. 8,439 (1988) (Order No. 599–D), did not contain any provisions different from Order 436 that have any bearing on this case.

**2.** "Mcf" refers to one thousand cubic feet at a pressure of 14.65 per square inch at 60 degrees Fahrenheit.

**3.** "Bcf" refers to billion cubic feet.

**4.** "Firm" service means "that the service is not subject to a prior claim by another customer or another class of service and receives the same priority as any other class of firm service." 18 C.F.R. § 284.8(a)(3) (1989).

**5.** "Interruptible" service means "that the capacity used to provide the service is subject to a prior claim by another customer or another class of service and receives a lower priority than such other classes of service." 18 C.F.R. § 284.9(a)(3) (1989).

monthly reservation charge of $3.07/Mcf for any firm service that PSCo might elect. In September 1987, FERC approved CIG's application subject to the following limitations: (1) CIG must charge PSCo its maximum volume No. 1–A tariff rate [6] for interruptible service—a rate significantly higher than that which CIG had proposed in its application; (2) CIG could offer PSCo only interruptible service and not the firm service option CIG had requested; and (3) the certificate would expire once CIG accepted a blanket certificate or after one year. Of course, CIG could apply to renew the certificate. *See* 40 F.E.R.C. ¶ 61,231 (1987).

In its request for rehearing, CIG noted three "errors," namely: (1) the refusal to certify firm service; (2) the imposition of a one-year term; and (3) the failure to approve the rate negotiated by the parties. CIG did not list as error the imposition of the blanket certificate acceptance term limitation. CIG requested only that "on rehearing [FERC] should eliminate the *1 year restriction* imposed by the September 15 order and issue a certificate for the requested ten-year term." Rec., tab 7, at 114 (emphasis added). FERC denied rehearing. *See* 42 F.E.R.C. ¶ 61,157 (1988).

### B. Case No. 88–1273

Since December 26, 1985, CIG had held an individual section 7(c) certificate authorizing it to transport gas acquired by PSCo. In May 1987, CIG applied, *inter alia*, to extend the certificate for two more years, and month-to-month thereafter, in accord with its contract with PSCo. FERC granted the application, but again mandated that the certificate expire after one year from the date of the order, or earlier if CIG accepted a blanket certificate. Rec., tab 9, at 170. In its rehearing request, CIG argued that the one-year limitation was unreasonable, but did not argue that the blanket certificate acceptance limitation was similarly unacceptable. CIG's request concluded that "on rehearing [FERC] should eliminate the *one-year restriction* ... and

grant CIG's petition for the requested term." *Id.* at 173 (emphasis added). FERC denied the request. *See* 42 F.E.R.C. ¶ 61,138 (1988).

### C. Case No. 88–1478

In April 1987, CIG sought to amend its individual 7(c) certificate under which it had transported gas for the City of Colorado Springs since October 1985. Among other requested amendments, CIG asked for an initial two-year extension, to be continued month-to-month thereafter. FERC granted the application but limited the term to one year, or until CIG accepted a blanket certificate. *See* 42 F.E.R.C. ¶ 61,020 (1988). In its request for rehearing, CIG claimed that FERC "erroneously limited the term of the authorization to the earlier of one year from the date of the order or the date CIG accepts a blanket certificate." Rec., tab 11, at 220–21. As in the request in Case No. 88–1273, CIG targeted its argument only at the one-year term limitation. The rehearing request stated that FERC "fails to address why the parties' need for, and CIG's application for, a *longer-term* certificate should be arbitrarily limited in the Order." *Id.* at 224 (emphasis added). The only discussion of blanket certificates occurred in the argument concerning the one-year limitation: CIG argued that the shorter term could "force" it to forego its individual certificate by accepting a blanket certificate. *See id.* at 225. CIG then requested that "on rehearing [FERC should] issue an order approving the amendment as requested by CIG." *Id.* at 226. No indication exists that CIG sought to amend the blanket certificate acceptance limitation, which its preamendment certificate had contained. *See* FERC's Order Amending Certificate, *Colorado Interstate Gas Co.*, 42 F.E.R.C. ¶ 61,020, 61,118 (1988); *see also* FERC's Order Amending Certificate, *Colorado Interstate Gas Co.*, 39 F.E.R.C. ¶ 62,214 (1987). FERC denied CIG's request for rehearing. *See* 42 F.E.R.C. ¶ 61,341 (1988).

---

**6.** This rate derived from schedules CIG filed with FERC under section 311 of the Natural Gas Policy Act, 15 U.S.C. § 3371 (1988).

### D. CIG's Acceptance of a Blanket Certificate

From March 1987, CIG had pending before FERC an application for a blanket certificate. On August 4, 1988, five days after CIG filed its opening brief in the present appeal, CIG accepted a blanket certificate. The three individual certificates at issue in this appeal consequently expired prior to the running of the alternate one-year limitation.[7]

As near as we can fathom, CIG continued to supply PSCo and the City of Colorado Springs under its newly acquired blanket certificate authority. It appears undisputed that CIG is presently free to charge PSCo the rate it had requested in its December 1986 application. CIG also does not seem to dispute that it presently can offer PSCo the same firm service option it had originally requested. Finally, blanket certificate authority appears to be indefinite in duration. Of course, the new blanket certificate transportation service is subject to a different regulatory framework than had been the case under the expired section 7(c) individual certificates.

### II.

### DISCUSSION

### A. The Blanket Certificate Acceptance Limitations

█ In all three certificates, FERC mandated that the certificate expire upon CIG's acceptance of a blanket certificate. FERC argues that CIG cannot challenge this limitation on appeal because CIG did not argue this limitation's invalidity in its requests for rehearing below.

The statute giving this court jurisdiction to hear this appeal provides that "[n]o objection to the order of the Commission shall be considered by the [reviewing] court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure so to do." 15 U.S.C. § 717r(b) (1988). The statute further provides that "[t]he application for rehearing shall set forth *specifically* the ground or grounds upon which such application is based." *Id.* § 717r(a) (emphasis added). The aim of this exhaustion requirement is "to afford [FERC] an opportunity to bring its knowledge and expertise to bear on an issue before it is presented to a generalist court." *Northwest Pipeline Corp. v. FERC*, 863 F.2d 73, 78 (D.C.Cir.1988) (citing *Federal Power Comm. v. Colorado Inters. Gas Co.*, 348 U.S. 492, 501, 75 S.Ct. 467, 472–73, 99 L.Ed. 583 (1955)). We agree with the District of Columbia Circuit that we must apply this statute "punctiliously" to carry out its purpose. *New Jersey Zinc Co. v. FERC*, 843 F.2d 1497, 1503 (D.C.Cir.1988).

CIG's requests for rehearing clearly did not put FERC on notice that CIG was attacking the validity of the blanket certificate acceptance limitation. In none of the requests did CIG specify a ground upon which the blanket certificate acceptance limitation was invalid. Instead, CIG objected specifically only to the alternate one-year limitation and asked for relief only from that limit. CIG's arguments concentrated on FERC's insistence on "short-term" limits, while the blanket certificate acceptance limitation carries no particular time limit.

CIG argues in the alternative that it had a "reasonable ground" under section 717r(b) of the NGA for failing to address the blanket certificate acceptance limitation. In essence, CIG asserts that it should be excused for viewing the alternative term limitations as a single "one-year" limit, because FERC so viewed them in its orders. FERC did indeed state both conditions in the disjunctive in one sentence.[8] But stat-

---

7. The certificate in case No. 88–1169 was due to expire on September 15, 1988 under the one-year limit. The certificates in case Nos. 88–1273 and 88–1478 were due to expire under the one-year limit on December 2, 1988 and January 19, 1989, respectively. All of these certificates were subject to renewal.

8. In FERC's order in case No. 88–1169, the term limitations were referred to as follows: "We will also limit the authorization to a term of one year from the date of issuance of this order *or* the date that CIG accepts a blanket transportation certificate, whichever comes first." 40 F.E.R.C. ¶ 61,231, 61,784 (1987) (emphasis added).

ing them in such a manner does not detract from the fact that the fixed term limitation has a wholly different effect than the blanket limitation and that the conditions were easily separable. CIG was therefore under a duty to specify on rehearing exactly what aspects of the term limitations displeased it. CIG inexcusably failed to do this and, accordingly, Congress precludes us from passing on the validity of the blanket certificate acceptance limitations on the duration of the three certificates at issue.

## B. The One–Year Fixed Term Limitations

▉ FERC limited the term of all three certificates to a maximum of one year, subject to renewal after further review, instead of the longer terms CIG had requested. CIG claims that the one-year limit is arbitrary and capricious because it lacks record support. We conclude that we have no jurisdiction to decide this issue, since CIG's acceptance of a blanket certificate prior to the running of the one-year limits in all three certificates rendered the issue moot.

Under Article III, Section 2 of the United States Constitution, the Federal Courts' jurisdiction is limited to deciding "actual, ongoing controversies." *Honig v. Doe,* 484 U.S. 305, 108 S.Ct. 592, 601, 98 L.Ed.2d 686 (1988). Only a " 'real and substantial controversy admitting of specific relief through a decree of conclusive character' " allows us to adjudicate this matter. *Preiser v. Newkirk,* 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975) (quoting *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971)). " 'Generally an appeal should be dismissed

as moot when events occur that prevent the appellate court from granting any effective relief.' " *Ten Mile Industr. Park v. Western Plains Serv. Corp.,* 810 F.2d 1518, 1522 (10th Cir.1987) (quoting *Thournir v. Buchanan,* 710 F.2d 1461, 1463 (10th Cir.1983)).

Under highly analogous facts, the court in *New Jersey Zinc Co.,* 843 F.2d at 1503, held that the same one-year limitation was mooted after acceptance of a blanket certificate. In *New Jersey Zinc,* Tennessee Gas Pipeline Co. applied for five-year terms in two section 7(c) certificates. *Id.* at 1500. FERC imposed a blanket certificate acceptance limitation on both certificates and also limited them to one and two years, respectively. *Id.* As in the present case, several months later Tennessee Gas accepted a blanket certificate, causing the certificates to expire. The court was unable to pass on the validity of the blanket certificate acceptance limitation for the identical reason involved in this case: failure to raise the issue on rehearing. The court in *New Jersey Zinc* held that the prior expiration of the certificates upon acceptance of blanket certification mooted the challenge to the one-year and two-year limits. The court reasoned that "[b]ecause of the alternative and operative blanket certificate limitation, Tennessee would be in no different position today had FERC set the fixed term at two, five, or any other number of years." *Id.* at 1503. This same reasoning applies to moot the one-year limitations in the present case. Moreover, now that CIG's certificates have expired under presumptively valid terms, our order granting CIG its right to a ten-year term would be completely ineffective.[9]

FERC's Order in Case No. 88–1273, 41 F.E.R.C. ¶ 61,247, 61,647 (1987), contains similar language. In case No. 88–1478, FERC's Order Amending Certificate apparently amended only the one-year portion of the term limitations. 42 F.E.R.C. ¶ 61,020, 61,118 (1988). The earlier October 11, 1985, order, as amended, 39 F.E.R.C. ¶ 62,214 (1987), which FERC was seeking to amend, already contained a blanket certificate acceptance limitation.

**9.** The D.C. Circuit's decision in *ANR Pipeline Co. v. FERC,* 876 F.2d 124 (D.C.Cir.1989), fully supports our conclusion. In *ANR Pipeline Co.,* as in the present case, ANR's individual certificates

were subject to a one-year limit, or earlier if it accepted a blanket certificate. ANR accepted a blanket certificate prior to the running of the one-year period, triggering the expiration of the certificates at issue. *Id.* at 128. In contrast to the facts before us, however, ANR had preserved for review both aspects of the term limitation.

The court held that the challenge to *both* term limitations when considered in the aggregate was not moot since the automatic "open-access" condition in the blanket certificate regime is absent in the individual certificate regime. *Id.* In the present case, however, CIG failed to pre-

CIG argues in desultory fashion that FERC's imposition of the one-year limit "forced" it to accept blanket certification, causing the individual certificates to expire. Were we to find that the limit impermissibly coerced CIG, then the limitation would not be moot. But CIG in this case did not adequately demonstrate that the combination of the blanket certificate acceptance limitation and the one-year limit impermissibly coerced it into accepting blanket certification. Obviously, FERC wanted to discourage pipelines in most cases from obtaining simultaneous individual and blanket certification. No indication exists that FERC sought to prohibit CIG's use of individual section 7(c) certificates. CIG's conclusory statements in its reply brief that operating under the short-term individual certificates, subject to renewal, was "wholly infeasible", Reply Brief at 3, finds no factual support in the record. Thus we must conclude that CIG voluntarily accepted the blanket certificate. Accordingly, we hold that the one-year limit issue is moot.

We also agree with the reasoning of the court in *New Jersey Zinc*, under which it did not apply the "capable of repetition, yet evading review" exception to the mootness doctrine, *see Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). The court in *New Jersey Zinc* observed that similar fixed term limits had been properly adjudicated on the merits in several cases. *See, e.g., New Jersey Zinc*, 843 F.2d 1500–01; *Florida Gas Transmission Co. v. FERC*, 876 F.2d 42, 44–45 (5th Cir.1989). Moreover, now that CIG has blanket certificate authority, it is unlikely that it will reapply for

individual 7(c) certificates, risking a repetition of the one-year term limit. At the very least, CIG has not indicated that it has reapplied.[10] *See Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982) (party invoking exception to mootness doctrine must show a reasonable expectation or demonstrated probability of repetition).

## C. The Rate Condition in Case No. 88–1169

CIG claims that FERC's requirement that CIG charge PSCo its maximum tariff rate as a condition of approval of its individual 7(c) certificate is beyond its statutory authority and is arbitrary and capricious. We cannot decide this issue since CIG's acceptance of a blanket certificate has rendered it moot.

As we discussed above, the certificates expired by their own terms when CIG accepted a blanket certificate. Consequently, the challenged rate terms "disappeared into the regulatory netherworld when the certificates themselves entered the archives." *Northwest Pipeline Corp.*, 863 F.2d at 76. In *Northwest Pipeline*, the company challenged FERC's requirement that it charge a different rate than it had proposed. *Id.* at 75. When the certificate expired pending appeal, the court held the challenge moot because it could no longer give prospective relief as to rates in validly expired certificates. *See also ANR Pipeline Co.*, 876 F.2d at 129 ("If we should find the expiration of the individual certifi-

---

serve for review its challenge to the blanket certificate acceptance limitation, precluding us from considering both term limitations in the aggregate. This case is more analogous to the *ANR Pipeline Co.* court's mootness analysis of the blanket certificate acceptance limitation challenge *after* it had held that the one-year limit was valid on the merits. In this posture, the court held the blanket limitation issue moot, since the certificate had already validly expired under the one-year limit, and no party sought retroactive relief. *Id.* at 130. The same reasoning applies to the instant case, since we must deem valid the blanket certificate acceptance limitation, which operates to moot the alternative one-year provision.

**10.** The factual posture of this case contrasts markedly with the facts in *ANR Pipeline Co.*, under which the court found Great Lakes' challenge to the durational limitations "capable of repetition yet evading review." 876 F.2d at 129. Great Lakes, as opposed to CIG in the present case, never accepted a blanket certificate. Instead, it chose to obtain an extension of its individual 7(c) certificate containing the identical term conditions. *Id.* at 128. Clearly, Great Lakes is more likely to be subjected to the identical constraints it challenged than is CIG, which accepted blanket certification and never reapplied for individual 7(c) certification.

cate valid, ... ANR's challenge to the rate condition would be moot...."").

We find ourselves in a similar situation in the present case. The certificate here expired by its own terms when CIG accepted a blanket certificate. The rate condition expired with the certificate. We are unable to grant any prospective relief as to a condition contained in the now-expired certificate. Moreover, under its new blanket certificate authority, CIG apparently obtained the ability to charge PSCo the identical rate it had originally requested. Thus, even if we were to hold the rate condition unacceptable, any prospective relief we could offer would have no practical effect.

We also are unable to conclude that the rate condition is " 'capable of repetition, yet evading review.' " *Honig*, 108 S.Ct. at 601. CIG has not reapplied, *see* Reply Brief at 2 n. 1, and the same rate condition in the future would not likely reappear. Moreover, CIG has not shown that imposition of such a rate condition in the future would necessarily evade review. Although a company forced to charge a *higher* rate obviously would have no damages from a rate differential, CIG contends that continued imposition of the rate condition would "kill the deal." Reply Brief at 4. If this eventuality occurs, then a rate condition, such as the one in Case No. 88–1169, would be properly reviewable. *See Northwest Pipeline Co.*, 863 F.2d at 77 (a claim for retroactive relief would avoid mootness problem).

#### D. The Denial of Firm Service in Case No. 88–1169

 CIG does not dispute FERC's contention that CIG presently can give PSCo the identical firm service option it had requested in its section 7(c) certificate application. Moreover, the certificate at issue expired by virtue of a presumptively valid blanket certificate acceptance term limitation. Thus, CIG's challenge to the denial of firm service is moot for substantially the same reasons given in the discussion of the rate condition above.

### III.

### CONCLUSION

We are unable to review the validity of the blanket certificate acceptance limitation in the certificates in Case Nos. 88–1169, 88–1273, and 88–1478, since CIG did not properly challenge them on rehearing below. The one-year term limitation issue in each of those cases, the rate condition challenge in 88–1169, and the protest of FERC's denial of firm service in 88–1169 are moot. Accordingly, we vacate the orders under review in each case. *See United States v. Munsingwear*, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950); *Northwest Pipeline Corp.*, 863 F.2d at 78–79 (1988).