**BANGOR HYDRO–ELECTRIC COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

**Fitchburg Gas and Electric Light Company, et al., Public Service Company of New Hampshire, Intervenors.**

**Nos. 89–1742, 90–1109.**

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 7, 1990.

Decided Feb. 15, 1991.

Leonard W. Belter, with whom William J. Madden, Jr. was on the brief, Washington, D.C., for petitioner in 89–1742 and 90–1109.

Hanford O'Hara, Atty., F.E.R.C., with whom Jerome Feit, Sol., F.E.R.C., was on the brief, Washington, D.C., for respondent in 89–1742 and 90–1109.

Albert R. Simonds, Jr. was on the brief, Washington, D.C., for intervenor Public Service Co. of New Hampshire in 89–1742 and 90–1109.

Harry H. Voigt and Diane B. Schratwieser, Washington, D.C., entered appearances for intervenor Fitchburg Gas & Elec. Light Co., et al., in 89–1742.

Before MIKVA, Chief Judge, EDWARDS and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed PER CURIAM.

Opinion concurring in part and dissenting in part filed by Circuit Judge D.H. GINSBURG.

PER CURIAM:

In 1989, intervenor Public Service Company of New Hampshire (PSNH), an electric utility, filed a tariff raising rates for its non-firm transmission service. Petitioner Bangor Hydro–Electric Company, a customer for that service, intervened to oppose the increase. The FERC accepted PSNH's rate schedule for filing in an order dated March 31, 1989. 46 F.E.R.C. ¶ 61,419.

Bangor filed a Request for Rehearing, in which it claimed that the tariff rate was improperly calculated because it failed to account for two PSNH services—those for entitlements in New England Power Pool (NEPOOL) planned units, and those for delivery of Yankee generating unit entitlements—as firm transmission services. In its Order Denying Rehearing, the FERC apparently agreed with Bangor that "only certain firm transmission services have been added to PSNH'S system loads to compute the annual peak demand." 49 F.E.R.C. ¶ 61,030, at 61,117 (October 6, 1989). It nevertheless concluded that since PSNH had reflected these other transmission loads in the calculation by crediting the revenue requirement for the revenues received from these services, PSNH had taken a reasonable approach. *Id.*

That basis for upholding PSNH's rate calculation was undercut, however, when PSNH itself acknowledged, in response to Bangor's Motion for Clarification or Reconsideration, that it had *not* credited the revenue requirement in the way the FERC had assumed in its Order Denying Rehearing. In a subsequent Order (Denying Reconsideration and Clarifying in Part Order Denying Rehearing), the FERC recognized that the earlier rationale regarding revenue

credits was no longer viable. The agency adhered to its earlier conclusion, nonetheless, 50 F.E.R.C. ¶ 61,107, at 61,352 & n. 13 (February 1, 1990), on the new ground that the NEPOOL transmission service was non-firm, for which it relied on its decision in a prior case, Boston Edison Company, 44 F.E.R.C. ¶ 61,199 (August 1, 1988). *Id.* It made no finding as to the character of, nor otherwise mentioned, the Yankee service.

 Bangor argues in this court that the FERC's determination that NEPOOL service is non-firm, and that PSNH's rate is properly calculated, is not based upon substantial evidence.* We agree.

Section 13.2 of the NEPOOL Agreement suggests that transmission of NEPOOL entitlements enjoys some priority over other transmission service. The FERC concedes in this court that the agreement gives higher priority to transmission service involving participants than to that involving non-participants, but it claims that the NEPOOL service still has lower priority than firm transmission service.

There are two difficulties with this argument. First, that factual claim is contested by Bangor, and the FERC offers no evidence to support the claim. Had the FERC opinions analyzed the relative priorities of customers transmitting NEPOOL entitlements and other, concededly firm transmission service customers, we might well defer to its conclusion; it did not, however, address this issue in its opinions in this

case or in the *Boston Edison* opinion upon which it relied for its conclusion that the service was non-firm. Second, even if the order of priority is (1) "firm" transmission customers, (2) NEPOOL customers, and (3) "non-firm" transmission customers, it is unclear why NEPOOL-related transmission service should be classified as "non-firm" rather than as "firm." If it is necessary to classify a service with intermediate priority as one or the other, then we would uphold a decision, based upon a reasoned explanation, to classify that service as "non-firm." Again, however, the FERC opinions do not undertake this analysis.

The FERC also failed to reconcile its position with a prior opinion in which it cited § 13.2 of the NEPOOL Agreement and stated that "under the terms of the NEPOOL pooling agreement, [pool members] are guaranteed transmission access to pool planned generation facilities." Ocean State Power, 44 F.E.R.C. ¶ 61,261, at 61,982 (August 19, 1988). This statement might reasonably be interpreted to mean that pool participants have a right to transmission service for entitlements that is not conditioned upon the availability of transmission capacity. So read, the statement is inconsistent with the agency's determination in this case, but the FERC neither distinguished the statement nor disavowed that interpretation.

At least in light of these apparent inconsistencies, the FERC's earlier finding in

---

* Our dissenting colleague expresses concern that Bangor did not adequately present its arguments before the agency. We believe, however, that Bangor's petition for rehearing put the agency on notice of the relevant issues and fully satisfied the jurisdictional requirement set out in 16 U.S.C. § 825*l*(b) (1988).

Bangor's petition plainly was centered upon the argument that the "data used by PSNH in deriving the unit charge at issue erroneously failed to include significant quantities of firm transmission service provided by PSNH." *See* Request of Bangor Hydro–Electric Company for Rehearing at 2, *reprinted in* Joint Appendix ("J.A.") 97 (original capitalization omitted). Bangor then alluded to the seemingly firm nature of the NEPOOL and Yankee service obligations and argued that "[i]f PSNH ... is going to rely on a single peak demand allocator based upon firm service actually provided plus a re-

serve 'factor,' it should include *all* such service." *Id.* (emphasis in original). Bangor followed this with a proposed recalculation of PSNH's firm service commitment, including the NEPOOL and Yankee commitments, in order to derive what Bangor contended should be PSNH's proper rate. *See id.* at 4–5, *reprinted in* J.A. 99–100. When it is read in this context, we believe Bangor's petition adequately advised the agency of Bangor's contention that PSNH's NEPOOL and Yankee service obligations were essentially firm and should have been treated as such for purposes of deriving PSNH's rates. *See Villages of Chatham & Riverton, Ill. v. FERC,* 662 F.2d 23, 30 (D.C.Cir.1981) ("any argument brought clearly to the attention of the Commission by the party's petition for rehearing has been preserved for review in a court of appeals"). We are confirmed in this belief by the fact that the FERC itself never claimed to have been deprived of reasonable notice of Bangor's claims.

*Boston Edison* does not amount to "substantial evidence" upon which to base its holding in this case. In *Boston Edison,* the FERC stated that the complainant

> ha[d] provided no evidence to support its allegation that the NEPOOL system was designed to provide firm transmission of non-firm loads all over New England.... While the NEPOOL participants coordinate transmission planning, the NEPOOL grid is the result of each NEPOOL participant building facilities to meet the needs of its own firm load. Utilities do not, by virtue of their NEPOOL association, construct facilities to serve other utilities' loads. [The utility], therefore, has built its transmission facilities to serve its own *firm* generation customers, plus [its firm transmission customers].

44 F.E.R.C. at 61,707–08 (footnote omitted). As Bangor points out, *Boston Edison* was not specifically directed to the character of the transmission service for NEPOOL *entitlements.* In any event, *Boston Edison* did not consider the specific language of § 13.2, and since it preceded *Ocean State,* it did not, of course, explain the FERC's arguably inconsistent construction of § 13.2 in the latter case.

We therefore remand the matter to the FERC in order that it may address these points. On remand, the Commission should also determine whether the Yankee service is firm, considering the language of the Yankee service contract and any other pertinent evidence. Bangor failed to attach a copy of the Yankee contract to its motions to the FERC or to cite in those proceedings specific provisions of the Yankee contract that it believed were inconsistent with a conclusion that that service is non-firm. In light of this failure, a remand solely on the ground that FERC did not analyze the character of the Yankee service might be inappropriate. Bangor did argue to the FERC, however, that "PSNH ... provides transmission service for Maine Yankee, Connecticut Yankee and Massachusetts Yankee under separate transmission arrangements, similar to service provided for pool-planned units under the NEPOOL agreement," and Bangor's proposed rate

calculation treated the Yankee service as firm. Since the FERC must on remand analyze the NEPOOL service, we believe it should consider the Yankee service as well.

■ Finally, Bangor argues that the FERC failed adequately to address its argument that the six-fold differential between PSNH's rate filing and the rate it charges for delivery of pool power discriminates against non-NEPOOL related use of the system, and thus has an anti-competitive impact in the bulk power market. The Commission observed in response to this argument only that the "differential in rates between pool and non-pool services [is not] discriminatory" because "pool participation carries with it particular benefits and obligations." 49 F.E.R.C. at 61,117. In petitioning for review, Bangor argues that the FERC should have been more attentive to "the implications of its actions on competition," in order "to advance the objectives of the antitrust laws"; thus, it emphasizes the "anticompetitive effect" of "skewing" consumer choice in favor of pool power over its own. Because the FERC opinions do not expressly address the possibility that the rate differential may be anticompetitive, and the connection, if any, between the obligations incurred by members of NEPOOL and petitioner's claim of anticompetitive effect is not apparent, we remand for the Commission to deal with that claim more clearly. *See City of Vernon, Cal. v. FERC,* 845 F.2d 1042, 1046–48 (D.C. Cir.1988).

For the reasons set out above, the petition is granted and the case is remanded to the FERC for further proceedings.

*So ordered.*

D.H. GINSBURG, Circuit Judge, concurring in part and dissenting in part:

In its petition for rehearing before the FERC, Bangor presented not one of the numerous arguments it now urges upon the court in support of the proposition that the NEPOOL and Yankee services are firm. Before the agency, Bangor made only the following bare assertion that the NEPOOL service is firm:

[U]nder § 13.2 of the NEPOOL agreement, PSNH is obligated to transfer ownership interests or unit contract entitlements in pool planned units. Surely this obligation represents a firm transmission obligation.

Its claim that the Yankee service is firm was similarly brief and unsupported by argument:

PSNH also provides transmission service for Maine Yankee, Connecticut Yankee and Massachusetts Yankee under separate transmission arrangements, similar to service provided for pool planned units under the NEPOOL agreement.

Nor did Bangor present any argument in favor of either proposition in its Motion for Reconsideration, nor attach a copy of the relevant agreements, nor argue that *Ocean State* is inconsistent with a finding that the NEPOOL service is non-firm. Thus, at no time during the FERC proceedings did Bangor make the arguments it relies upon here.

Under § 313(b) of the Federal Power Act, "[n]o objection to [an] order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in [an] application for rehearing unless there is reasonable ground for the failure to do so." 16 U.S.C. § 825*l* (b). Whether a party can be said to have made its "objection" in a petition for rehearing depends upon the degree of generality permitted. Section 313(a) of the Act states that the application for rehearing shall set forth "specifically" the grounds upon which it is based. 16 U.S.C. § 825*l* (a).

As this court has stated of the identically worded provision in the Natural Gas Act, "[t]he obvious and salutary purpose" of such an exhaustion requirement "is to afford the Commission an opportunity to bring its knowledge and expertise to bear on an issue before it is presented to a generalist court." *Northwest Pipeline Corp. v. FERC,* 863 F.2d 73, 77–78 (D.C. Cir.1988). Keeping this purpose in mind, I cannot find that the three sentences I have quoted above from Bangor's Request for Rehearing afforded the FERC a sufficient opportunity to consider the several specific arguments, based upon ambiguous contract language and arguably relevant precedent, that Bangor now presses upon the court in forty pages of briefs.

Bangor argues that it "had no way of knowing that the Commission would rely on an erroneous determination that the Yankee and pool-planned unit transmission services were non-firm, until the Commission's order denying reconsideration." If so, then Bangor may not be faulted for its failure to argue (as opposed to merely asserting its position on the firm/non-firm issue) prior to the time that the FERC determined that the transmission services are non-firm.

It does not follow, however, that we may consider Bangor's arguments for the first time here. The exhaustion requirement of the Federal Power Act requires a petitioner for review first to file an application for further rehearing of an order on rehearing "when the later order ... raises objections ... that are substantially different from those raised against the original one." *Town of Norwood v. FERC,* 906 F.2d 772, 775 (D.C.Cir.1990). Therefore, if Bangor was blindsided by the FERC's unexpected reliance upon an earlier finding, in another case, that the disputed services are non-firm, then it should have petitioned the agency to rehear that issue.

As for Bangor's argument that the agency's 1990 decision denying reconsideration is inconsistent with a statement in its 1988 decision in *Ocean State,* it should be dispositive that Bangor raised the issue of inconsistency with that case for the first time in its reply brief here. Therefore, the court could not properly consider the objection even if it had been raised before the agency. "Considering an argument advanced for the first time in a reply brief ... is not only unfair to an appellee, but also entails the risk of an improvident or ill-advised opinion on the legal issues tendered." *McBride v. Merrell Dow and Pharmaceuticals, Inc.,* 800 F.2d 1208, 1211 (D.C.Cir.1986) (citation omitted). Bangor's extreme and unexplained tardiness has deprived the FERC of any opportunity—ei-

ther below or in this court—to reconcile this case with *Ocean State*.

Moreover, Bangor's failure to argue inconsistency with *Ocean State* in its opening brief prevented the FERC from objecting in its brief to Bangor's making that argument for the first time on appeal. Contrary to the court's statement, *see* Ct.Op. at n. *, however, FERC counsel did make this point at oral argument:

> [*Ocean State*] was only mentioned in the reply brief ... and was not brought to the Commission's attention. And it was not brought to my attention either in the—in the initial brief. And so I have to apologize to the court for not—for not dealing with that case, but it didn't come up before the reply brief.

In response to a question regarding the FERC's failure to give consideration in its opinion to *Ocean State* as well as to *Boston Edison,* counsel replied:

> I still would have to say, however, that I think it's a different situation when the matter is brought to the Commission's attention than when it's not, and in this case, it wasn't.

In these circumstances, I think it clear that the court is without jurisdiction over any of Bangor's objections except its objection to the competitive effect of the Commission's decision. With regard to that claim, I concur in the court's disposition.